```
 1                 IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF NEBRASKA
 2

 3    UNITED STATES OF AMERICA,      )     Case No. 4:20CR3084
                                     )
 4              Plaintiff,           )
                                     )
 5    vs.                            )
                                     )
 6    NORMA BERNAL-PIOQUINTO,        )
                                     )     Lincoln, Nebraska
 7              Defendant.           )     November 24, 2020

 8

 9
                         TRANSCRIPT OF PROCEEDINGS
10              BEFORE THE HONORABLE CHERYL R. ZWART
                     UNITED STATES MAGISTRATE JUDGE
11

12                    A-P-P-E-A-R-A-N-C-E-S

13    FOR THE PLAINTIFF:           Ms. Tessie L. Smith
                                   U.S. Attorney's Office
14                                 100 Centennial Mall North
                                   Suite 487, Federal Building
15                                 Lincoln, NE 68508-3865

16
      FOR THE DEFENDANT:           Mr. Chinedu Igbokwe
17                                 Banwo Igbokwe Law Firm
                                   3568 Dodge Street
18                                 Suite 100
                                   Omaha, NE 68131
19

20    TRANSCRIBER:                 Ms. Lisa Grimminger, RDR, CRR, CRC
                                   100 Centennial Mall North
21                                 Room 587
                                   Lincoln, NE 68508
22                                 (402) 437-1908

23

24    Proceedings recorded by electronic sound recording, transcript
      produced with computer.
25
```

1          (At 2:17 p.m. on November 24, 2020; with counsel and the

2    defendant present via videoconference:)

3               COURTROOM DEPUTY:  We're on the record.

4               THE COURT:  We're on the record in Case Number

5    4:20CR3084, the United States of America versus Norma

6    Bernal-Pioquinto.

7          Counsel, please enter your appearance.

8               MS. SMITH:  Please enter the appearance of Tessie

9    Smith on behalf of the United States.

10              MR. IGBOKWE:  Thank you, Judge.  My name is Chinedu

11   Igbokwe on behalf of the defendant, Norma Bernal-Pioquinto.

12              THE COURT:  All right.  Ms. Bernal-Pioquinto, you're

13   here today because your attorney has advised us that you want

14   to enter a plea of guilty.  Is that true?

15              THE DEFENDANT:  Yes.

16              THE COURT:  You're listening with the assistance of

17   an interpreter at this time.  Are you hearing and understanding

18   what she's saying?

19              THE DEFENDANT:  Yes.

20              THE COURT:  I need to explain to you that I -- I need

21   to explain to you that I am not your sentencing judge and I'm

22   not the judge who will determine whether your guilty plea is

23   accepted and whether your plea agreement is accepted.  Those

24   matters will take -- be taken up by Judge Gerrard, who is your

25   sentencing judge, but what I can do for you today is gather

1  some information from you and make a recommendation to Judge

2  Gerrard on those issues.

3      Do you agree to proceed before me?

4          MR. IGBOKWE:  Yes, we do, Judge.

5          THE COURT:  Does your -- I'm going to have -- I'm

6  going to wait for your client to answer that.

7      Do you agree to proceed before me?

8          THE DEFENDANT:  Yes.

9      (Defendant sworn.)

10         THE COURT:  You're now under oath, you've sworn to

11  tell the truth which means if you lie during this proceeding,

12  you can be separately prosecuted for the crime of perjury.

13     Do you understand?

14         THE DEFENDANT:  Yes.

15         THE COURT:  At this time --

16         THE INTERPRETER:  Your Honor.

17         THE COURT:  Yes.

18         THE INTERPRETER:  May the interpreter request that

19  counsel mutes his microphone, because the interpreter is

20  getting an echo.

21         THE COURT:  Okay.

22         THE INTERPRETER:  Defense counsel.

23         THE COURT:  All right.  Nedu, can you mute your

24  microphone?

25         MR. IGBOKWE:  Absolutely.

1            THE COURT:  All right.  And make sure I can always
2      see your face, sir, so that if you are talking that I know that
3      you forgot to unmute.  Okay?  All right.
4          All right.  At this time I'm going to have the government
5      explain to you the charges that you intend to plead guilty to
6      and the possible penalty for those charges.
7          Ms. Smith.
8            MS. SMITH:  Ms. Bernal-Pioquinto, the count to which
9      you intend to plead guilty asserts a violation of Title 14,
10     United States Code, Section 408(a)7, which is misuse of a
11     Social Security number.
12         The maximum possible penalty for this crime is a prison
13     sentence of up to five years, a fine of up to $250,000 which
14     can be imposed in addition to any term of imprisonment, a term
15     of supervised release to follow any term of imprisonment of up
16     to three years, and a $100 special assessment.
17         Do you understand this charge and the maximum possible
18     penalties that it carries?
19           THE INTERPRETER:  Your Honor, the interpreter cannot
20     hear the defendant.
21           THE COURT:  Okay.
22           THE DEFENDANT:  Yes.
23           THE COURT:  All right.  Having heard the charges and
24     the possible penalties again, is it still your intent to plead
25     guilty?

1           THE DEFENDANT:  Yes.

2           THE COURT:  All right.  Before we go down this path a

3    little bit more, Ms. Smith, I did see Ms. Bierbower sent a copy

4    of an interlineated indictment.  Has that been filed, or do we

5    need to go over that right now?

6           COURTROOM DEPUTY:  Judge, this is Jeri.  It's on

7    file.

8           THE COURT:  All right.  Thank you.

9       All right.  I have in front of me a Petition to Enter a

10   Plea of Guilty and a plea agreement that appear to have been

11   signed by you, Ms. Bernal-Pioquinto.

12      Did you go over these documents with your attorney?

13          THE DEFENDANT:  Yes.

14          THE COURT:  When you went over these documents, did

15   he interpret them in Spanish or have an interpreter there to

16   help you with that?

17          THE DEFENDANT:  The interpreter.

18          THE COURT:  All right.  Did you understand what that

19   interpreter was saying?

20          THE DEFENDANT:  Yes.

21          THE COURT:  It appears that you signed the documents

22   on November 20th.  When you went over them, were you under the

23   influence of drugs or alcohol or have -- having any difficulty

24   thinking?

25          THE DEFENDANT:  No.

```
 1                THE COURT:  Are you having any difficulties hearing,

 2     understanding and answering my questions right now?

 3                THE DEFENDANT:  No.

 4                THE COURT:  All right.  Did you answer all of the

 5     questions in the petition truthfully?

 6                THE DEFENDANT:  Yes.

 7                THE COURT:  Did your attorney write down those

 8     answers for you?

 9                THE DEFENDANT:  Yes.

10                THE COURT:  And after going through the document, did

11     you sign it?

12                THE DEFENDANT:  Yes.

13                THE COURT:  Going to the plea agreement, did you go

14     over the plea agreement with your attorney with the assistance

15     of an interpreter?

16                THE DEFENDANT:  Yes.

17                THE COURT:  Did he answer all of your questions about

18     the meaning of the plea agreement?

19                THE DEFENDANT:  Yes.

20                THE COURT:  And after going through the plea

21     agreement, did you sign it?

22                THE DEFENDANT:  Yes.

23                THE COURT:  Has anybody threatened you in any way to

24     get you to plead guilty?

25                THE DEFENDANT:  No.
```

1     THE COURT:  Has anybody promised you anything other

2 than the promises in the plea agreement to get you to plead

3 guilty?

4     THE DEFENDANT:  No.

5     THE COURT:  Do you understand that if the Court

6 accepts your plea of guilty, you will be found guilty of a

7 felony?

8     THE DEFENDANT:  Yes.

9     THE COURT:  Do you understand that you have the right

10 to plead not guilty and make the government try to prove this

11 case at trial?

12     THE DEFENDANT:  Yes.

13     THE COURT:  Do you understand you are giving up your

14 trial rights by pleading guilty?

15     THE DEFENDANT:  Yes.

16     THE COURT:  You've been represented in this case by

17 Mr. Igbokwe; is that correct?

18     THE DEFENDANT:  Yes.

19     THE COURT:  Do you believe that he has investigated

20 this case sufficiently so that you know what to do today?

21     THE DEFENDANT:  Yes.

22     THE COURT:  Are you satisfied with his

23 representation?

24     THE DEFENDANT:  Yes.

25     THE COURT:  Do you understand that if you chose to go

1    to trial, you would have the right to counsel representation at

2    the trial?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you understand that if you could no

5    longer afford counsel representation, counsel would be

6    appointed for you at no cost to you?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand that if you chose to go

9    to trial, you would have a jury trial?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you understand that at that trial you

12   would have the right to see and hear all of the witnesses who

13   testify against you and to have them cross-examined on your

14   behalf?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand you would have the

17   right to call witnesses for you and if they would not come

18   voluntarily, you could get a court order called a subpoena to

19   make them come and testify?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that if you chose to go

22   to trial, you could testify yourself if you wanted to or you

23   could stay silent?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Do you understand that if you stayed

1    silent at the trial, the jury would not be allowed to consider

2    that silence in deciding whether you are guilty?

3           THE DEFENDANT:  Yes.

4           THE COURT:  And do you understand that if you chose

5    to go to trial, the government would not get a conviction

6    against you unless it was able to prove to every single juror

7    that you are guilty beyond a reasonable doubt?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Are you willing to give up all of those

10   trial rights and plead guilty in this case instead?

11          THE DEFENDANT:  Sorry?

12          THE COURT:  Are you willing to give up all of your

13   trial rights and plead guilty in this case instead?

14          THE DEFENDANT:  Yes.

15          THE COURT:  You're looking at a sentence in this case

16   of up to five years in prison, a possible fine of up to

17   $250,000 could be imposed in addition to any term of

18   imprisonment, supervised release of up to three years, and a

19   $100 mandatory special assessment.

20      Is that your understanding of what you're facing?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Has Mr. Igbokwe explained the sentencing

23   guidelines to you?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Has he explained that the guidelines

1    provide the starting point that Judge Gerrard will look at in

2    determining what your sentence ought to be?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you understand that Judge Gerrard --

5              UNIDENTIFIED SPEAKER:  (Indiscernible)

6              THE COURT:  Do you understand that Judge Gerrard will

7    consider all of your relevant conduct in determining your

8    sentence?

9              THE DEFENDANT:  Yes.

10             THE COURT:  For example, he'll consider whether you

11   have a criminal history of any kind and the types of crimes

12   reflected in that history, whether there were any persons

13   harmed by your conduct and the extent of that harm, those types

14   of things.  Do you understand?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And once Judge Gerrard considers all of

17   your relevant conduct and makes his findings, do you understand

18   he can sentence you within the guidelines that you've discussed

19   with your attorney, but he does not have to?  He could go above

20   or below those guidelines based upon his determination.  Do you

21   understand?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And once Judge Gerrard determines how

24   much time you will spend in prison, do you understand you will

25   be required to serve all of that time and the most you can get

1    off of that sentence is 54 days per year for good time served

2    and that's only if you earn good time.  Do you understand?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Now, after you serve your time in prison,

5    you may not be done serving your sentence.  You may be placed

6    on supervised release for up to three years.  I want to make

7    sure you understand how all of that works.

8        First of all, it's my understanding that you are not a

9    citizen of the United States but you are trying to remain in

10   the United States.  If you are allowed to stay in the United

11   States, you will be placed -- and are placed on supervised

12   release, you will have to follow the conditions in the

13   sentencing order for up to three years, and you'll be

14   supervised by the court to make sure that you follow them.

15       Do you understand?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And if you violate those conditions in

18   your sentencing order, you can be brought back to court and

19   sent back to jail.  Do you understand?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Now, you may also be deported.  Do you

22   understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Has Mr. Igbokwe explained to you that by

25   pleading guilty in this case you will have a felony record in

1    the United States?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Has he explained to you that with that

4    felony record, if you are deported, it is unlikely you will

5    ever be able to enter the United States legally again?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Now, if you are deported, I just want to

8    make sure you understand.  If you are placed on conditions of

9    release, if you were to reenter the United States without

10   permission or commit any other crime while you are still on

11   conditions of release in your sentencing order, your penalty

12   for that new crime here in the United States may be greater

13   because you were still serving the sentence in this case when

14   you committed another crime.

15      Do you understand?

16              THE DEFENDANT:  Yes.

17              THE COURT:  All right.  You will be required to pay a

18   $100 mandatory special assessment.  Were you aware of that?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Ms. Smith, is there restitution in this

21   case?

22              MS. SMITH:  Your Honor, there is the possibility of

23   restitution, yes.

24              THE COURT:  Okay.  When you cause harm to other

25   people through your criminal conduct, you can be required to

1    pay for that harm.  That is called restitution.  Do you

2    understand?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Do you understand that at the time of

5    sentencing the government may present evidence of the harm you

6    caused by the conduct which you're admitting today, and if

7    Judge Gerrard is convinced of that harm, he could impose as

8    part of your sentence a requirement that you make a payment in

9    restitution?

10     Do you understand?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Now, you have a plea agreement with the

13    government which outlines your agreement regarding what should

14    happen at the time of sentencing.  Do you understand that this

15    agreement is between you and the government?  It is not binding

16    on Judge Gerrard.

17           THE DEFENDANT:  Yes.

18           THE COURT:  At this time I'm going to have Ms. Smith

19    explain the plea agreement to you.  Please listen as she does

20    that.  I will ask you questions about what she says.

21     Ms. Smith.

22           MS. SMITH:  Pursuant to the plea agreement in this

23    matter, the defendant agrees to plead guilty to Count II of the

24    indictment, and in exchange the government will dismiss

25    Counts I, III and IV at the time of sentencing.

1      This plea agreement includes the nature of the offense,

2  factual basis for the charges, the elements of the offense, and

3  the possible penalties.

4      The parties agree that this plea agreement is limited to

5  the United States Attorney's Office for the District of

6  Nebraska and cannot bind any other federal, state or local

7  prosecuting, administrative or regulatory authorities.

8      There is a nonbinding Guidelines calculation set forth in

9  this agreement that calls for a base offense level of 6, and if

10  the defendant is found entitled, the government will move for a

11  reduction of one additional level for the defendant's

12  acceptance of responsibility.  The defendant, as a non-U.S.

13  citizen, understands and acknowledges that her plea and

14  conviction in this case carry a risk of deportation.

15      This plea agreement contains a waiver of appeal and

16  collateral attack within the defendant's limits -- excuse me,

17  with limits -- which limits the defendant's rights in these two

18  areas, and there's a waiver of the right to withdraw her plea

19  agreement pursuant to Rule 11(d) of the Federal Rules of

20  Criminal Procedure.

21      And I believe that fairly summarizes the plea agreement in

22  this case.

23           THE COURT:  All right.  Mr. Igbokwe, do you agree?

24           MR. IGBOKWE:  Yes, Judge, I do agree.

25           THE COURT:  All right.  Ms. Bernal-Pioquinto, did you

1  listen as the government described the plea agreement?

2        THE DEFENDANT:  Yes.

3        THE COURT:  Did her description match your

4  understanding of your agreement with the government?

5        THE DEFENDANT:  Yes.

6        THE COURT:  Under the terms of the plea agreement,

7  you're giving up your right to appeal and collateral attack

8  with certain exceptions.  I need to make sure you understand

9  what that means.

10    Everything that's done by this court is subject to being

11  looked at by another court to make sure it was done right.

12  That process is called an appeal and the court that looks at it

13  is the Eighth Circuit Court of Appeals.

14    Do you understand?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Do you understand that under the terms of

17  this plea agreement, you're giving up your right to that appeal

18  process unless you are claiming that Mr. Igbokwe provided you

19  with ineffective assistance?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Collateral attack is different than an

22  appeal.  With a collateral attack you can challenge your

23  conviction and your sentence by claiming your constitutional

24  rights were violated.

25    Do you understand?

1            THE DEFENDANT:  Yes.

2            THE COURT:  Do you understand that under the terms of

3    this plea agreement, you're giving up your right to that type

4    of proceeding as well unless you are claiming that Mr. Igbokwe

5    provided you with ineffective assistance or you are claiming

6    that what you're admitting to here today is not a crime?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Do you understand that your waiver of

9    appeal and your waiver of collateral attack apply both to your

10   conviction and to the sentence you've not yet received?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Have you talked to Mr. Igbokwe about your

13   appeal rights and your collateral attack rights?

14           THE DEFENDANT:  Yes.

15           THE COURT:  After having those discussions and

16   considering your options, have you decided to give up your

17   right to appeal and to collateral attack with the exceptions

18   listed in the plea agreement?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Has anybody made any promises to you that

21   are not in the written plea agreement?

22           THE DEFENDANT:  No.

23           THE COURT:  Do you understand there is no guarantee

24   your sentence will be less because you pled guilty instead of

25   being found guilty by a jury?

THE DEFENDANT:  Yes.

THE COURT:  At this time I'm going to have the government explain the key facts the government would present at trial if this case went to trial.  Please listen as Ms. Smith does that.  I will ask you questions about what she says.

Ms. Smith.

MS. SMITH:  If this case were taken to trial, the government would put forward evidence that on June 6th of 2019, the defendant filled out and signed a Form I-9 in order to begin employment with Packers Sanitation Services, Inc., in Grand Island, Nebraska, using the identity and Social Security number of a true United States citizen.

On the Form I-9, she filled in the blanks for her U.S. Social Security number with a Social Security number ending in 4139.

She provided this as verification of -- of the information provided on the I-9, and she provided a Social Security card which bore a United States government agency seal and stated that the number ending in 4139 was the Social Security number established for her.

The defendant knew that the Social Security number ending in 4139 had not been assigned to her by the Commissioner of Social Security.

The defendant provided the Social Security number ending

1    in 4139 and a card bearing the number with the intention of

2    deceiving Packers Sanitation and Services into believing that

3    that number was assigned to her by the Commissioner of Social

4    Security.

5        The defendant made this false representation to satisfy

6    Section 274A, subsection (b), of the Immigration and

7    Nationality Act.

8            THE COURT:  Mr. Igbokwe, do you agree if this case

9    went to trial, that evidence would go before a jury?

10            MR. IGBOKWE:  Yes, Judge, we do.

11            THE COURT:  All right.  Ms. Bernal-Pioquinto, did you

12    listen as the government described the evidence against you?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Is everything that Ms. Smith said the

15    truth?

16            THE DEFENDANT:  Yes.

17            THE COURT:  On June 6th of 2019, were you here in

18    Nebraska?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Did you apply for a job at Packers

21    Sanitation Services in Grand Island?

22            THE DEFENDANT:  Yes.

23            THE COURT:  As part of that application for

24    employment, did you fill out a Form I-9?

25            THE DEFENDANT:  Yes.

1    THE COURT:  When you filled out that Form I-9, did

2  you use a Social Security number that ended in 4139?

3    THE DEFENDANT:  Yes.

4    THE COURT:  Did you know at the time when you used

5  that Social Security number that it had not been assigned to

6  you by the Social Security department of the United States?

7    THE DEFENDANT:  Yes.

8    THE COURT:  Did you use a false Social Security

9  number or represent that the number ending in 49- -- 139 was --

10  was yours when it was not with the intent of deceiving Packers

11  Sanitation Services and convincing them that you were eligible

12  for employment in the United States?

13    THE DEFENDANT:  Yes.

14    THE COURT:  Any additional questions, Ms. Smith?

15    MS. SMITH:  No, Your Honor.  Thank you.

16    THE COURT:  Mr. Igbokwe.

17    MR. IGBOKWE:  No, Judge.

18    THE COURT:  Ms. Smith, do you believe the guilty plea

19  is knowing, intelligent and voluntary and that there is a

20  factual basis for it?

21    MS. SMITH:  Yes, Your Honor.

22    THE COURT:  Mr. Igbokwe, do you agree?

23    MR. IGBOKWE:  Yes, I do, Judge.

24    THE COURT:  All right.  Ms. Bernal-Pioquinto, do you

25  want this court to accept your plea of guilty?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Are there any questions you have before I

3    proceed?

4          THE DEFENDANT:  No.

5          THE COURT:  To Count II of the indictment, which

6    alleges that on or about June 6th of 2019, while in the

7    District of Nebraska, you did knowingly and for the purpose

8    of -- of obtaining something of value, in this case a job, and

9    with the intent to deceive, falsely represented on a Form I-9

10   that your Social -- Social Security number -- provided a false

11   Social Security number that ended in 4139 when you knew that

12   that Social Security number was not assigned to you, what do

13   you plead?

14         THE DEFENDANT:  Guilty.

15         THE COURT:  I do find that your guilty plea --

16         UNIDENTIFIED SPEAKER:  (Indiscernible)

17         THE COURT:  I do find that your guilty plea is

18   knowing, intelligent and voluntary and that there is a factual

19   basis for it.  I will recommend to Judge Gerrard that he accept

20   your plea of guilty and your plea agreement.

21       He'll take up the issue of your plea agreement at the time

22   of sentencing.

23       We're looking at a sentencing date with Judge Gerrard of

24   February 19th at 10:30 a.m.

25       Does that work for the attorneys?

1      MS. SMITH:  It does for the government.

2      MR. IGBOKWE:  It does for the defense, Judge.

3      THE COURT:  All right.  Ms. Bernal-Pioquinto, does it

4  work for you as well?

5      THE DEFENDANT:  Yes.

6      THE COURT:  All right.  Let me check what Pretrial

7  Services has said.

8      You've done very well on pretrial supervision.  They have

9  no complaints, and I see no reason to detain you at this time.

10 I will leave you with one warning, though.

11     After your guilty plea is accepted by the court, the rules

12 I'm required to follow change.  If you were to make any

13 mistakes at all on your conditions of release after this, I

14 would have to place you in jail.  Do you understand that?

15     THE DEFENDANT:  Yes.

16     THE COURT:  All right.  Good luck to you, ma'am, and

17 we are in recess.

18     (Adjourned at 2:46 p.m.)

19                    * * * * * * * *

20     I, Lisa G. Grimminger, certify that the foregoing is a

21 correct transcription to the best of my ability from the

22 digital recording of the proceedings held in the above-entitled

23 matter.

24

25     */s/Lisa G. Grimminger*                December 3, 2020
        Lisa G. Grimminger, RDR, CRR, CRC   Date